IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD L. GRUTSCH<br>2804 Sandhurst Drive<br>Lewis Center, Ohio 43035<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.<br>C/O CSC-LAWYERS INCORPORATING<br>SERVICE (CORPORATION SERVICE<br>COMPANY)<br>50 West Broad Street<br>Columbus, Ohio 43215<br><br>    Defendant. | CASE NUMBER: 2:15-cv-2583<br><br>DISTRICT JUDGE:<br><br>MAGISTRATE JUDGE:<br><br><br><br>**JURY DEMAND ENDORSED HEREIN** |

### COMPLAINT FOR MONEY DAMAGES

The following allegations are based upon Plaintiff Richard L. Grutsch ("Mr. Grutsch")'s personal knowledge, the investigation of counsel, and information and belief. Mr. Grutsch, through counsel, alleges as follows:

### I. PRELIMINARY STATEMENT

1. On January 10, 2014, the Consumer Financial Protection Bureau put into effect new servicing regulations that made substantial changes to the rules that govern a servicer's review of a borrower for loss mitigation options, 12 C.F.R.1024.41.

2. These new servicing regulations were designed to put a stop to dilatory, duplicative, and dual-tracking practices when evaluating borrowers for loss mitigation options. Among many of the new servicing regulations, servicers are now required to notify borrowers within five days of what supplemental documentation is required to complete their loss mitigation application, 12 C.F.R.1024.41(b)(2)(i)(B). Servicers are also required to promptly review

1

complete or facially complete applications for loss mitigation, 12 C.F.R.1024.41(c).  This serves to promote the goal of expeditious evaluation of each borrower for loss mitigation options so borrowers are not subjected to a never-ending ferris wheel of loss mitigation application review.  Borrowers are entitled to statutory damages, actual damages, and attorneys fees when servicers violate these new regulations, 12 C.F.R.1024.41(a).

3. Here, during nearly *eight months* of loss mitigation efforts, Mr. Grutsch submitted *eleven* sets of requested documentation to the servicer of his mortgage loan, Wells Fargo Bank, N.A. ("Wells Fargo").

4. During this time, Wells Fargo: (a) failed to properly evaluate Mr. Grutsch for loss mitigation options, (b) failed to timely notify Mr. Grutsch seven times of supplemental documentation it required to process Mr. Grutsch's application, (c) requested unnecessary and duplicative documentation ten times, and (d) refused to offer Mr. Grutsch any loss mitigation options, as required by federal law.

5. Further, Wells Fargo's delay allowed Mr. Grutsch's Mortgage Loan to balloon to a point where a loan modification may no longer be feasible.

6. Wells Fargo repeatedly engaged in the conduct specifically prohibited by the new servicing regulations, denying Mr. Grutsch his right to a prompt and fair evaluation of his loss mitigation options.

7. Mr. Grutsch institutes this action against Wells Fargo for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2605, *et seq.*, and Regulation X, 12 C.F.R. 1024, *et seq.*

## II. BACKGROUND

8. In 2003, Mr. Grutsch purchased residential real property located at 2804 Sandhurst Drive, Lewis Center, Ohio 43035 ("the Property") with a note secured by a mortgage ("the Note") ("the Mortgage") (collectively, "the Mortgage Loan").

9. On April 5, 2011, Defendant Wells Fargo filed an action to foreclose on the Mortgage Loan, Delaware County Common Pleas captioned as *Bank of America, N.A. v. Smallwood*, Case No. 11-CVE-040435 ("the Foreclosure Action").

10. After mediation proved unsuccessful, Mr. Grutsch filed for bankruptcy and on June 22, 2012, the trial court stayed the proceedings.

11. Unfortunately, Mr. Grutsch's bankruptcy was dismissed and on June 17, 2014, the trial court reactivated the foreclosure proceedings.

12. On September 16, 2014, the trial court granted Wells Fargo's Motion for Summary Judgment.

13. Mr. Grutsch subsequently filed a Motion for Relief from Judgment and an appeal of the Court's judgment entry. The appeal is pending before Ohio's Fifth District Court of Appeals (Case No. 14 CAE 10 0067 and 15 CAE 05 0041) ("the Appeals").

14. Throughout the pendency of the Foreclosure Action and the Appeals, Mr. Grutsch worked with Wells Fargo to obtain a loan modification and save his home.

## III. JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. 2614, and 28 U.S.C. 1331 and 1337.

16. This Court has personal jurisdiction over Wells Fargo because Wells Fargo transacts business within this District, the Mortgage Loan was incurred within this District, and the property

which was the subject of the Mortgage Loan is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

17. Venue is proper in accordance with 28 U.S.C. 1391(b)(3), as Wells Fargo is subject to personal jurisdiction in this District.

**IV. PARTIES**

18. Each action or inaction alleged herein against Wells Fargo is also an allegation of action or inaction by Wells Fargo's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

19. Mr. Grutsch is a natural person currently residing within this Court's jurisdiction at 2804 Sandhurst Drive, Lewis Center, Ohio 43035.

20. At all times relevant to this transaction, Mr. Grutsch was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. 2602(5).

21. Wells Fargo is a National Bank organized under the laws of the United States.

22. Wells Fargo has its principal place of business in South Dakota.

23. At all times relevant to this transaction Wells Fargo is and was an association.

24. At all times relevant to this transaction, Wells Fargo was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. 2602(5).

25. In 2003, Mr. Grutsch entered into the Mortgage Loan with the original lender, The Equitable Mortgage Corporation ("the Original Lender"), to purchase the Property.

26. Mr. Grutsch used the Note and Mortgage to borrow money to fund his purchase of his primary residence, the Property.

27. Mr. Grutsch lives and lived in the Property with his family at all times relevant to this transaction.

28. The Property is designed principally for the occupancy of from one to four families.

29. Mr. Grutsch was and is obligated or allegedly obligated to pay on the Mortgage Loan.

30. The Mortgage Loan was and is an alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes.

31. The 2003 transaction was and is a consumer credit transaction within the meaning of 15 U.S.C. 1602.

32. At all times relevant to this transaction, the Original Lender was a corporation, partnership, cooperative, or association.

33. At all times relevant to this transaction, the Original Lender was and is an **"Organization"** within the meaning of 15 U.S.C. 1602(d) (formerly, 15 U.S.C. 1602(c)).

34. At all times relevant to this transaction, the Original Lender was and is a **"Person"** within the meaning of 15 U.S.C. 1602(e) (formerly, 15 U.S.C. 1602(d)).

35. At all times relevant to this transaction the Original Lender regularly extended consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required.

36. The Mortgage Loan was initially payable to the Original Lender.

37. At all times relevant to this transaction, the Original Lender was and is a **"Creditor"** within the meaning of 15 U.S.C. 1602(g) (formerly, 15 U.S.C. 1602(f)).

38. The Mortgage Loan was purportedly assigned to Wells Fargo.

39. The 2003 transaction was and is a **"Federally Related Mortgage Loan"** within the meaning of RESPA, 12 U.S.C. 2602(1).

40. At all times relevant to this transaction, Mr. Grutsch was and is a **"Borrower"** of a federally related mortgage loan within the meaning of RESPA.

41. At all times relevant to this transaction, Mr. Grutsch sent and Wells Fargo received scheduled periodic payments pursuant to the terms of Mr. Grutsch's residential Mortgage Loan.

42. At all times relevant to this transaction, Wells Fargo engaged and engages in **"Servicing"** Mr. Grutsch's residential Mortgage Loan within the meaning of RESPA, 12 U.S.C. 2605(i)(3).

43. At all times relevant to this transaction, Wells Fargo was and is a **"Servicer"** within the meaning of RESPA, 12 U.S.C. 2605(i)(2).

## V. COUNT ONE – RESPA

44. Mr. Grutsch incorporates all paragraphs by reference as though fully written here.

45. Mr. Grutsch cooperated fully with Wells Fargo to modify his Mortgage Loan so he could continue to make monthly mortgage loan payments.

46. Mr. Grutsch submitted hundreds of pages of documents over nearly eight months in his good faith effort to save his home.

47. Wells Fargo refused to work with Mr. Grutsch and requested unnecessary and duplicative documentation again and again.

48. Furthermore, Wells Fargo refused to properly evaluate Mr. Grutsch for loss mitigation options, failed to provide Mr. Grutsch with all notices required by federal law, and in the end refused to offer Mr. Grutsch any loss mitigation options.

49. On or around November 18, 2014, Mr. Grutsch submitted a loss mitigation application to Wells Fargo for loss mitigation options ("the Application").

50. The Application was a written request for loss mitigation options that was accompanied by information required by a servicer for a loss mitigation option.

51. The Application was a **"Loss Mitigation Application"** as defined by RESPA, 12 C.F.R. 1024.31.

52. Mr. Grutsch's Application contained every document Wells Fargo requested.

53. By submitting all the documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application was facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

54. Wells Fargo was required to send Mr. Grutsch written correspondence or otherwise contact Mr. Grutsch to notify him that his application was complete or incomplete within five business days, or by November 25, 2014.

55. Wells Fargo sent a letter to Mr. Grutsch dated November 26, 2014 requesting additional documentation.

56. Wells Fargo failed to send written correspondence or otherwise contact Mr. Grutsch to notify him that his Application was complete or incomplete within five business days, in violation of 12 C.F.R. 1024.41(b)(2)(i)(B).

57. On or around December 17, 2014, Mr. Grutsch submitted every document – for the second time – that Wells Fargo requested in its November 26, 2014 letter.

58. By submitting all the missing documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application became facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

59. Wells Fargo was required to send Mr. Grutsch written correspondence or otherwise contact Mr. Grutsch to notify him that his application was complete or incomplete within five business days, or by December 26, 2014.

7

60. Wells Fargo sent a letter to Mr. Grutsch dated December 31, 2014 requesting additional documentation.

61. Wells Fargo failed to send written correspondence or otherwise contact Mr. Grutsch to notify him that his Application was complete or incomplete within the required time, in violation of 12 C.F.R. 1024.41(b)(2)(i)(B) and 12 C.F.R. 1024.41(c)(2)(iv).

62. Wells Fargo failed to promptly request Mr. Grutsch to submit additional information or make corrections to his loss mitigation application, in violation of 12 C.F.R. 1024.41(c)(2)(iv).

63. On or around February 2, 2015, Mr. Grutsch submitted every document – for the third time – that Wells Fargo requested in its December 31, 2014 letter.

64. By submitting all the missing documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application became facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

65. Wells Fargo was required to send Mr. Grutsch written correspondence or otherwise contact Mr. Grutsch to notify him that his application was complete or incomplete within five business days, or by February 9, 2015.

66. Wells Fargo sent a letter to Mr. Grutsch dated February 20, 2015 requesting additional documentation.

67. Wells Fargo failed to send written correspondence or otherwise contact Mr. Grutsch to notify him that his Application was complete or incomplete within the required time, in violation of 12 C.F.R. 1024.41(b)(2)(i)(B) and 12 C.F.R. 1024.41(c)(2)(iv).

68. Wells Fargo failed to promptly request Mr. Grutsch to submit additional information or make corrections to his loss mitigation application, in violation of 12 C.F.R. 1024.41(c)(2)(iv).

8

69. On or around March 2, 2015, Mr. Grutsch submitted every document – for the fourth time – that Wells Fargo requested in its February 20, 2015 letter.

70. By submitting all the missing documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application became facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

71. On or around March 3, 2015, Wells Fargo sent an email to Mr. Grutsch indicating some of his loss mitigation documentation went stale, and requesting additional documentation.

72. On or around March 18, 2015, Mr. Grutsch submitted every document – for the fifth – that Wells Fargo requested in its March 3, 2015 email.

73. By submitting all the missing documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application became facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

74. On or around March 18, 2015, Wells Fargo sent an email to Mr. Grutsch indicating some of his loss mitigation documentation went stale, and requesting additional documentation.

75. On or around March 23, 2015, Mr. Grutsch submitted every document – for the sixth time – that Wells Fargo requested in its March 18, 2015 email.

76. By submitting all the missing documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application became facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

77. Wells Fargo was required to send Mr. Grutsch written correspondence or otherwise contact Mr. Grutsch to notify him that his application was complete or incomplete within five business days, or by March 20, 2015.

78. Wells Fargo sent a letter to Mr. Grutsch dated March 30, 2015 requesting additional documentation.

79. Wells Fargo failed to send written correspondence or otherwise contact Mr. Grutsch to notify him that his Application was complete or incomplete within the required time, in violation of 12 C.F.R. 1024.41(b)(2)(i)(B) and 12 C.F.R. 1024.41(c)(2)(iv).

80. Wells Fargo failed to promptly request Mr. Grutsch to submit additional information or make corrections to his loss mitigation application, in violation of 12 C.F.R. 1024.41(c)(2)(iv).

81. On or around April 15, 2015, Mr. Grutsch submitted every document – for the seventh time – that Wells Fargo requested in its March 30, 2015 letter.

82. By submitting all the missing documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application became facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

83. Wells Fargo was required to send Mr. Grutsch written correspondence or otherwise contact Mr. Grutsch to notify him that his application was complete or incomplete within five business days, or by April 22, 2015.

84. Wells Fargo sent a letter to Mr. Grutsch dated May 4, 2015 requesting additional documentation.

85. Wells Fargo failed to send written correspondence or otherwise contact Mr. Grutsch to notify him that his Application was complete or incomplete within the required time, in violation of 12 C.F.R. 1024.41(b)(2)(i)(B) and 12 C.F.R. 1024.41(c)(2)(iv).

86. Wells Fargo failed to promptly request Mr. Grutsch to submit additional information or make corrections to his loss mitigation application, in violation of 12 C.F.R. 1024.41(c)(2)(iv).

87. On or around May 14, 2015, Mr. Grutsch submitted every document – for the eighth time – that Wells Fargo requested in its May 4, 2015 letter.

88. By submitting all the missing documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application became facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

89. Wells Fargo was required to send Mr. Grutsch written correspondence or otherwise contact Mr. Grutsch to notify him that his application was complete or incomplete within five business days, or by May 21, 2015.

90. Wells Fargo sent a letter to Mr. Grutsch dated May 25, 2015 requesting additional documentation.

91. Wells Fargo failed to send written correspondence or otherwise contact Mr. Grutsch to notify him that his Application was complete or incomplete within the required time, in violation of 12 C.F.R. 1024.41(b)(2)(i)(B) and 12 C.F.R. 1024.41(c)(2)(iv).

92. Wells Fargo failed to promptly request Mr. Grutsch to submit additional information or make corrections to his loss mitigation application, in violation of 12 C.F.R. 1024.41(c)(2)(iv).

93. On or around May 29, 2015, Mr. Grutsch submitted every document – for the ninth time – that Wells Fargo requested in its May 25, 2015 letter.

94. Wells Fargo sent a letter to Mr. Grutsch dated June 3, 2015 requesting additional documentation.

95. On or around June 11, 2015, Mr. Grutsch submitted every document – for the tenth time – that Wells Fargo requested in its June 3, 2015 letter.

96. By submitting all the missing documents and information requested by Wells Fargo, Mr. Grutsch's loss mitigation application became facially complete pursuant to 12 C.F.R. 1024.41(c)(2)(iv).

97. Wells Fargo was required to send Mr. Grutsch written correspondence or otherwise contact Mr. Grutsch to notify him that his application was complete or incomplete within five business days, or June 18, 2015.

98. Wells Fargo sent a letter to Mr. Grutsch dated June 29, 2015 requesting additional documentation.

99. Wells Fargo failed to send written correspondence or otherwise contact Mr. Grutsch to notify him that his Application was complete or incomplete within the required time, in violation of 12 C.F.R. 1024.41(b)(2)(i)(B) and 12 C.F.R. 1024.41(c)(2)(iv).

100. Wells Fargo failed to promptly request Mr. Grutsch to submit additional information or make corrections to his loss mitigation application, in violation of 12 C.F.R. 1024.41(c)(2)(iv).

101. On or around July 6, 2015, Mr. Grutsch submitted every document – for the eleventh time – that Wells Fargo requested in its June 29, 2015 letter.

102. Wells Fargo failed to promptly request Mr. Grutsch to submit additional information or make corrections to his loss mitigation application, in violation of 12 C.F.R. 1024.41(c)(2)(iv).

103. Wells Fargo acted with undue delay and inattention obtain documents and information to complete Mr. Grutsch's loss mitigation application, in violation of 12 C.F.R. 1024.41(b)(1).

104. Wells Fargo failed to evaluate Mr. Grutsch's loss mitigation application, in violation of 12 C.F.R. 1024.41(c)(1)(i), 12 C.F.R. 1024.41(c)(1)(ii)

105. Wells Fargo failed to either offer loss mitigation options or deny loss mitigation options to Mr. Grutsch, in violation of 12 C.F.R. 1024.41(d), 12 C.F.R. 1024.41(e), and 12 C.F.R. 1024.41(h).

106. Wells Fargo failed to provide accurate information regarding loss mitigation options available to Mr. Grutsch.

107. Wells Fargo failed to identify with specificity all loss mitigation options for which Mr. Grutsch may be eligible pursuant to any requirements established by an owner or assignee of Mr. Grutsch's Mortgage Loan, in violation of 12 C.F.R. 1024.38(a) and (b)(2).

108. Wells Fargo failed to identify documents and information that Mr. Grutsch is required to submit to complete a loss mitigation application and facilitate compliance with the notice required pursuant to 12 C.F.R. 1024.41(b)(2)(i)(B), in violation of 12 C.F.R. 1024.38(a) and (b)(2).

109. After Mr. Grutsch submitted his loss mitigation application and subsequently requested documentation, Wells Fargo failed to properly evaluate Mr. Grutsch for all loss mitigation options for which Mr. Grutsch may be eligible pursuant to any requirements established by the owner or assignee of Mr. Grutsch's Mortgage Loan and, where applicable, in accordance with the requirements of 12 C.F.R. 1024.41, in violation of 12 C.F.R. 1024.38(a) and (b)(2).

110. Wells Fargo fails to maintain policies and procedures that are reasonably designed to achieve the objectives of 12 CFR 1024.38(b) and ensure that the servicer can comply with 12 C.F.R. 1024.39(2), in violation of 12 C.F.R. 1024.38(a).

111. Wells Fargo regularly fails to evaluate and process loss mitigation applications of its borrowers in compliance with RESPA and Regulation X.

112. Wells Fargo engaged in a pattern or practice of noncompliance with the requirements of RESPA and Regulation X.

113. As a result of Wells Fargo's actions, Mr. Grutsch suffers severe emotional distress, including anxiety, stress, and sleepless nights.

114. As a result of Wells Fargo's actions, Mr. Grutsch was prevented from obtaining a loan modification to save his home.

115. As a result of Wells Fargo's actions, Mr. Grutsch was required to incur the expense of legal counsel to monitor and assist in the unending loss mitigation application process.

116. As a result of Wells Fargo's actions, Mr. Grutsch was required to incur the expense of legal counsel to bring this action.

117. Wells Fargo is liable to Mr. Grutsch under this Count for its RESPA violations in an amount equal to or greater than: statutory damages in excess of $2,000.00 for each violation, actual damages for each of Wells Fargo's violations of RESPA in excess of $250,000.00, and the costs of this action and attorney's fees, including pursuant to 12 U.S.C. 2605(f), 12 C.F.R. 1024.41(a).

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Mr. Grutsch respectfully prays that this Court:

A. Assume jurisdiction of Mr. Grutsch's claim;

B. Grant judgment in favor of Mr. Grutsch on his claim;

C. Grant Mr. Grutsch the maximum damages he seeks on his counts, including the maximum statutory damages available under each claim where statutory damages are available, and the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

D.  Award Mr. Grutsch the costs of this litigation, including filing fees and costs;

E.  Award Mr. Grutsch his attorney's fees;

F.  Award such other relief as the court deems appropriate.

Dated this 7th day of July, 2015.

                                             Respectfully Submitted,
                                             DOUCET & ASSOCIATES CO., LPA


                                             */s/ Audrey J. Balint*
                                             Audrey J. Balint (0092153)
                                             *Attorney for Richard L. Grutsch*
                                             700 Stonehenge Parkway, Suite 2B
                                             Dublin, OH  43017
                                             (614) 944-5219 PH
                                             (818) 638-5548 FAX
                                             Audrey@TroyDoucet.com




**JURY TRIAL DEMANDED**

Plaintiff Richard L. Grutsch respectfully requests a jury trial on all triable issues.


                                             */s/ Audrey J. Balint*
                                             Audrey J. Balint (0092153)